# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| CHARIS L. SEATON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-5047-CV-SW-FJG |
| | ) |
| FREEMAN HEALTH SYSTEM, and | ) |
| FREEMAN NEOSHO HOSPITAL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is defendant's Motion to Enforce Settlement Agreement (Doc. # 52).

## I. BACKGROUND

On April 18, 2005, plaintiff filed her Complaint alleging that the defendants violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Equal Pay Act, Fair Labor Standards Act, Family and Medical Leave Act, Age Discrimination in Employment Act, Title VII and Title IX of the Civil Rights Act of 1964. On January 29, 2006, the parties discussed settlement on three different occasions. Defendant states that plaintiff's counsel, Donna Kitchen, first asked if defendant was interested in settling the case, and defendant's counsel, Dwight Douglas, informed Ms. Kitchen that her last offer of $47,000 had been rejected and that he did not have authority to settle the matter. Ms. Kitchen called back a few minutes later and inquired as to what amount the defendant would be willing to settle for. Mr. Douglas informed Ms. Kitchen that since their offer of $7,500.00 was so far from plaintiff's initial demand,

that they chose not to respond to her offer.  Ms. Kitchen then inquired whether the $7,500 was still on the table.  Mr. Douglas told her that it was not and that he did not have authority to re-extend the offer.  Finally, Ms. Kitchen phoned Mr. Douglas a third time and told him that plaintiff would take $7,500.00 to settle the case.  Mr. Douglas told Ms. Kitchen that he would discuss the issue with management and get back to her.  There was no time limit placed on the offer.  When he arrived at his office the next morning, Ms. Kitchen had sent an email to Mr. Douglas at approximately 1:00 a.m. on January 30, 2006, stating "I have not heard from you on the last settlement, so I guess that means we are going to trial."  In an email sent at 7:56 a.m. Mr. Douglas responded "I am working on getting you a response to your offer.  I could not reach all those that I needed to last night."  In an email sent later that morning at 9:29 a.m. Mr. Douglas wrote to Ms. Kitchen:

> Donna - Freeman Neosho and Freeman Health System accept your offer to settle all current matters in dispute with Freeman for the sum of $7,500. As part of this settlement, Freeman will pay the court reporter cost incurred to date. It will be necessary that your client sign a General Release of all claims including the workmen's compensation claim. The general release must contain a confidentiality clause that prohibits both parties from releasing the details of the settlement or even disclosing the fact that the case is settled.  We will submit a release to you for review. Please send us all court reporter bills.  Dwight Douglas

Mr. Douglas sent another email to Ms. Kitchen at 9:38 a.m. that morning stating that "since the case was settled" he was going to cancel the court reporter which had been scheduled to appear to finish plaintiff's deposition that evening.  At approximately 1:30 p.m. Mr. Douglas called Ms. Kitchen and left her a voicemail.  When she returned his call she told him that she assumed the offer was no longer on the table since he had

2

not responded to it on Sunday. Mr. Douglas told Ms. Kitchen that he had not been able to reach all the necessary parties on Sunday evening, but stated that he had promptly accepted it on Monday morning. There was then a discussion about whether the worker's compensation claim should be included in the general release. Mr. Douglas then emailed Ms. Kitchen shortly afterwards in which he stated:

> Donna - This will respond to your latest call on settlement of the Seaton case. As I indicated we accepted your offer to settle the case for $7,500 which was extended to me at approximately 8 p.m. on Sunday Jan. 29, 2006. I understood that your offer would result in a general release of all claims your client claims to have against Freeman Health System and Freeman Neosho Hospital and all of their employees and agents. I sent you an email at approximately 10 am this date accepting your offer of settlement. You have now indicated that it was never intended to release the workman's compensation claim even though you mentioned in your Designation of Claims filed in the Federal law suit. To complete the settlement Freeman Health System and Freeman Neosho Hospital will exclude the Workman's compensation claim that now is pending. Your client may pursue this claim under applicable law to conclusion. I take it that all matters are now settled except for the pending comp claim. Please understand that Freeman has no interest in pursing the poem issue further since this matter is now settled. DD

On January 31, 2006 at 1:54 p.m., Virginia Fry, emailed Ms. Kitchen with a copy of the settlement and release agreement. Ms. Fry stated in her email:

> Donna, I am attaching the Settlement and General Release. You will note that the agreement excludes the comp claim. Because release of the age claim involves different timing issues, I arbitrarily allocated $500 of the total settlement of $7500 to the age claim. If you would prefer a different allocation, let me know.

At 2:40 p.m. Kitchen emailed Ms. Fry to ask why she had addressed the age claim as she had in the agreement. Fry provided an explanation by email at 3:19 p.m.

On January 31, 2006 at 7:07 p.m. Ms. Kitchen emailed Mr. Douglas and said in part:

> My client has read the settlement agreement. It says nothing about expunging negative documents from her record. Nor does it say anything

about her termination being changed to a resignation. I have told you all along this is very critical and important to me. My client is ready to move one, but not at the expense of her employment record. We have no settlement at this point.

On February 1, 2006 at 9:01 a.m. Mr. Douglas responded to Ms. Kitchen email:

Donna, During our conversation on Sunday night you made a firm offer to settle the case for $7,500. Not one word was said about her employment record or changes to her file. These were not part of the settlement offer. These conditions cannot be obtained by your client even if she was successful in her suit. As I have said many times your offer to settle was accepted and there were no special conditions. No changes to her file will be made and they were not agreed upon or even discussed by you at any time during the three conversations that we had Sunday night.

Later that day at 12:42 p.m. Mr. Douglas emailed Ms. Kitchen to inform her that the settlement checks had been issued.

## II. DISCUSSION

Defendants argue that a contract was created between Ms. Kitchen and Mr. Douglas. Defendants state that Ms. Kitchen offered to settle the case for $7,500. The following day, defendants accepted the offer and agreed to pay all court reporter costs incurred to date. Defendants argue that an enforceable contract was created and the Court has the power to enforce such contracts when they are clear and unambiguous.

Plaintiff's counsel states that she disputes each and every allegation contained in ¶¶ 1 -14 of Mr. Douglas' affidavit. She also states that the exhibits which the defendants attached are incomplete and do not include all electronic email between the attorneys. She also states that Mr. Douglas' affidavit does not accurately set forth what occurred between the parties[1]. Ms. Kitchen also argues that plaintiff did wish to settle,

---

[1] The Court did review the Supplemental Suggestions plaintiff filed in Opposition to the Motion to Enforce and considered the additional factual information plaintiff presented.

but no agreement was worked out on Sunday and that Mr. Douglas left her with the impression that a settlement appeared unlikely. Ms. Kitchen disputes that there was ever a settlement as there was no meeting of the minds. She states that initially Douglas informed her that the Worker's Compensation claim would be included in the release. However, when Ms. Kitchen questioned Douglas about this, he encouraged her to ask Ms. Seaton if she would agree to having this claim included. When Ms. Kitchen relayed that Ms. Seaton would not agree to having this claim included, Mr. Douglas told her that he would take that portion out of the settlement agreement. Additionally, Ms. Kitchen argues that Agreement offers plaintiff no protection in the event the settlement amount is not paid and does not mandate that the Court would retain jurisdiction. Ms. Kitchen states that terms were added to the Agreement regarding what plaintiff could say, but these terms were never discussed with Ms. Kitchen. She also states that the Agreement offers no protection for plaintiff. Ms. Kitchen states that neither she nor Ms. Seaton had any part in negotiating or drafting the agreement and the document was simply sent to Ms. Kitchen, without asking for her input. Plaintiff argues that the Court only has jurisdiction to enforce settlement agreements which it has entered. Plaintiff also states that the Court's ancillary jurisdiction does not permit the Court to rule on the matter and that the defendants' motion to enforce the settlement is not proper. Finally, plaintiff argues that defendants' Motion to Enforce was untimely, as the Revised Scheduling and Trial Order mandated that all pleadings be filed no later than 4:00 p.m. and the instant motion was not filed by that deadline. If the Court were to consider defendants' Motion, plaintiff requests that the Court conduct an evidentiary hearing.

  Defendants state in reply that although Ms. Kitchen denies the allegations contained in the Motion to Enforce, her denial is unsupported by the evidence. Even

though she states that the emails are incomplete or that all email correspondence is not included, she fails to state what emails are missing or incomplete. Defendants also note that Ms. Kitchen complains that she did not have the opportunity to assist in drafting the Agreement and that essential terms were not discussed with her. Defendants state that an agreement was drafted and sent to her for review. After reviewing the document, she made only one inquiry and did not ask for any of the language to be revised. Defendants state that there was a meeting of the minds and that a settlement was reached.

**A. Jurisdiction**

First, the Court finds that it does have jurisdiction to consider the Motion to Enforce the Settlement Agreement. Plaintiff, citing National Presto Industries Inc. v. Dazey Corp., 107 F.3d 1576 (Fed.Cir. 1997) and Kokkonen v. Guardian Life Insur. Co. of America, 511 U.S. 375 (1994) states that the Court only has jurisdiction to enforce settlement agreements which it has entered. Plaintiff also argues that the Court's ancillary jurisdiction does not permit the Court to enter a ruling on this matter as the Court may only exercise ancillary jurisdiction over settlement agreements as needed to manage its proceedings, vindicate its authority and effectuate its decrees.

This is incorrect. In National Presto Industries Inc., the Court stated, "[a] federal district court may not interpret and enforce a settlement agreement that terminated *prior litigation* unless it has some federal jurisdictional basis for enforcing a contract between parties." Id. at 1580. In the instant case, the court still possess jurisdiction over the instant action on the basis of federal question jurisdiction. Neither the parties nor the Court has yet dismissed the action, so the Court still has jurisdiction to consider whether the parties actually entered into a valid enforceable agreement to settle the instant

6

action and on what terms.

**B. Whether An Agreement Was Reached**

> Settlement agreements are governed by contract law. . . . In order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal . . . Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists. . . . Finally, the party requesting enforcement of a settlement agreement has the burden of proving its claim for relief by clear, convincing, and satisfactory evidence.

Kenner v. City of Richmond Heights, Missouri, 356 F.Supp.2d 1002, 1007-08 (E.D.Mo. 2005)(internal citations omitted).

In the instant case, it is apparent that the parties reached an agreement on the essential terms of the settlement. Ms. Kitchen extended an offer on Sunday evening when she called Mr. Douglas at home, the parties do not dispute that the offer had no time limitations or other conditions. After he was able to reach his clients the following morning, Mr. Douglas promptly emailed Ms. Kitchen and accepted the offer to settle for $7,500.00. The next day, Virginia Fry emailed Ms. Kitchen a copy of the agreement. After reviewing the agreement, Ms. Kitchen raised only one question about how the age claim had been addressed in the Agreement. (January 31, 2006, 2:40 p.m. email from Kitchen to Fry). It was only later that evening, after the plaintiff had read the agreement that Ms. Kitchen raised questions about expunging negative documents from Ms. Seaton's employment record and changing the termination to a resignation( January 31, 2006, 7:07 p.m. email from Kitchen to Douglas). The next morning, Mr. Douglas informed Ms. Kitchen that these terms were not part of the offer which had been extended on Sunday evening.

In Tirmenstein v. Central States Basement and Foundation Repair, Inc., 148 S.W.3d 849 (Mo.App. 2004), the Court stated, "[a]n agreement to settle is governed by

7

contract law. . . . A legal, valid settlement agreement must possess all the essential elements of any other contract. . . . The basic elements of a contract are offer, acceptance and consideration. . . . Any acceptance that includes new or variant terms from the offer amounts to a counter-offer." Id. at 851 (internal citations omitted). The Court finds that the parties entered into an agreement to settle the case for $7,500.00. Ms. Kitchen offered to settle the case, Mr. Douglas accepted and there was consideration. The Court finds that the additional terms which Ms. Kitchen wanted to add to the agreement on Tuesday, January 31, 2006, are not part of the agreement, because Ms. Kitchen did not condition defendant's acceptance of the offer on these terms. It is apparent that these additional terms were only suggested *after* Ms. Seaton read the Settlement Agreement. Ms. Kitchen states in her January 31, 2006 7:07 p.m. email to Mr. Douglas, "I have told you all along that is very critical and important to her. My client is ready to move on, but not at the expense of her employment record." These additional terms were never mentioned in any of the emails exchanged shortly after the settlement offer was accepted. It is clear that there were an after thought. Although they may have been important to Ms. Seaton, Ms. Kitchen did not make these additional terms a part of the offer which was extended to and accepted by the defendant. In Christianson v. Henderson, No. 4-97-CV-20826, 2000 WL 33364122, *5 (S.D.Iowa Mar. 10, 2000), the Court stated that the fact that defendant's unilateral mistake was caused by its attorney did not warrant exception to the rule that a unilateral mistake is insufficient to rescind or reform an agreement, absent fraud or some other inequitable conduct. Similarly, in Tsironis v. Bismark Hotel, 74 F.3d 1242 (7th Cir. 1996) the Court stated that if plaintiff's counsel failed to adequately represent him, plaintiff is nevertheless bound by his counsel's errors and the mistake does not provide a basis for

8

relief under Rule 60(b). Thus, the Court concludes that plaintiff's counsel entered into a valid, binding settlement agreement which does not include the additional terms which plaintiff now suggests were part of the offer.

Plaintiff's other arguments against enforcement include that she did not have any input into drafting the agreement, it provides no protection for the plaintiff and the motion to enforce was untimely filed. As discussed above, a copy of the Settlement Agreement was emailed to Ms. Kitchen on January 31, 2006. Presumably, the document was emailed to Ms. Kitchen so that she could review it and have an opportunity to make changes and corrections. The attached emails show that Ms. Kitchen did question why the age claim had been handled a particular way in the agreement. Additionally, she questioned whether the Workman's Compensation claim should be included and the defendants agreed to remove this claim from the Agreement. So, contrary to her assertion, Ms. Kitchen did play a part in structuring the Agreement. The Court also does not find that the Motion to Enforce was untimely filed. Ms. Kitchen refers to a statement in the Scheduling and Trial Order that all pleadings must be filed before 4:00 p.m. on the date that they are due. As the Motion to Enforce was filed after 4:00 p.m., she claims it is untimely and should not be considered. However, this deadline applies only to those pleadings which the Scheduling Order references. It does not apply to unanticipated motions such as the instant one.

The Court finds that the parties entered into an enforceable settlement agreement. The Court further finds that the expungement of plaintiff's employment record and changing plaintiff's termination into a resignation are not encompassed by the Agreement. If plaintiff or her attorney intended otherwise, they did not specify these conditions when the offer was made and accepted by the defendants.

9

## III. CONCLUSION

Accordingly, the Court hereby **GRANTS** defendant's Motion to Enforce the Settlement (Doc. # 52). All other motions are hereby **DENIED**.


Date: April 26, 2006 **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri Fernando J. Gaitan, Jr.
 United States District Judge